O

# United States District Court
# Central District of California

| | |
|---|---|
| ROAR, LLC, a California limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ROAR GLOBAL LIMITED, a United Kingdom entity of unknown form, d/b/a ROAR GLOBAL; and DOES 1 through 10, inclusive,<br><br>　　　　　　　Defendants. | Case No. 2:15-cv-05865-ODW(AFM)<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [46]** |

## I.　INTRODUCTION

Plaintiff ROAR, LLC ("Plaintiff") applies for entry of default judgment against Defendant ROAR Global Limited ("Defendant") on Plaintiff's Lanham Act claims for trademark infringement. For the reasons discussed below, the Court **GRANTS** Plaintiff's Application. (ECF No. 46.)[1]

## II.　FACTUAL BACKGROUND

Plaintiff is a successful talent management agency with offices throughout the United States, including Los Angeles and New York. (Compl. ¶ 8, ECF No. 1.) Plaintiff has continuously used the ROAR trademark in business from 2000 to the

---

[1] After considering the papers filed in support of the Application, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

present. (*Id.*) Plaintiff has also owned United States Trademark Registration No. 3,015,285 for the use of ROAR since November 2005. (*Id.* ¶ 9.)

Defendant is also a talent management agency, which—like Plaintiff—represents clients in the music, film, and television industries. (*Id.* ¶ 12.) Defendant changed its name to ROAR Global in 2009. (*Id.* ¶¶ 12–16; Def.'s Supp. Response to Interrogatory No. 5, ECF No. 46-1, Ex. 2.) While Defendant's principal place of business is the United Kingdom, it conducts business in the United States for its clients through partnerships with U.S.-based talent agencies William Morris Endeavor and Octagon Entertainment. (*See* Korn Decl., Exs. 3, 4, 6, ECF No. 46.) Because of the similarity between Plaintiff and Defendant's names, consumers have confused the two entities on multiple occasions. (*See* Suess Decl., Ex. 8, ECF No. 46-1.)

Plaintiff filed its Complaint alleging trademark infringement on August 4, 2015. While Defendant filed an Answer to the Complaint (ECF No. 13), this Court later struck that Answer because Defendant failed to meaningfully participate in this case. Defendant twice terminated its legal counsel, and failed to obtain new counsel by the court-imposed October 11, 2016 deadline. (ECF No. 43.) Defendant also ignored the Magistrate Judge's order compelling it to fully respond to interrogatories and document requests (*see* ECF No. 24), failed to pay $8,137 in monetary sanctions assessed by the Magistrate Judge (*see* ECF No. 34), and refused to supplement its written responses and document production obligations or make its principal available for deposition in Los Angeles. (*See id.*) Defendant even sent an email to Plaintiff's principals a day after the Magistrate Judge's Sanctions Order, indicating that:

> You are mistaken to think the Orders will be enforced in the UK or that you will recover any of your legal fees. The American legal system is indeed respected around the world—however as you will find, as many an American individual and company has before and at great expense, that the legal system of England and Wales does not view things in the same way.

(Korn Decl. ¶ 9.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment after the Clerk of Court enters default. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon the Clerk's entry of default, the defendant's liability is conclusively established, and well-plead factual allegations in the complaint are accepted as true. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion to enter a default judgment, a court considers several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

### A. Procedural Requirements

Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party the default was entered; (2) the pleading to which the default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) whether the defaulting party was properly served with notice. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Plaintiff has fulfilled these requirements. Plaintiff's counsel Gregory Korn submitted a declaration establishing that: (1) a default was entered by the Clerk against Defendant on October 13, 2016; and (2) Defendant is not a minor,

incompetent person, or active service member. (Korn Decl. ¶¶ 13–15.) Plaintiff served Defendant with the Application for Default Judgment by email and Federal Express, pursuant to Rule 55(b)(2). (*Id.* ¶ 16.) Thus, the Court finds that Plaintiff has satisfied the procedural prerequisites for the entry of a default judgment.

**B.** *Eitel* **Factors**

The Court finds that the *Eitel* factors weigh strongly in favor of entering a default judgment against Defendant. The Court analyzes each factor in turn.

### 1. Plaintiff Would Suffer Prejudice

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The Court finds that this factor favors entering a default judgment because Defendant has refused to participate in this case and has obstructed discovery. Therefore, the only way Plaintiff can obtain relief is through a default judgment.

### 2. Plaintiff Brought a Meritorious Claim and Plaintiff's Complaint Was Sufficiently Pleaded

The second and third factors, examining the merits of a plaintiff's substantive claims and the sufficiency of its Complaint, require a plaintiff to "state a claim upon which [it] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Plaintiff alleges that Defendant infringed on its trademark in violation of sections 32(1) and 43(a) of the Lanham Act. 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a).

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must show that: (1) it owns the trademark at issue; (2) the defendant has used "any reproduction, counterfeit, copy, or colorable imitation" of the plaintiff's registered mark in connection with the sale, offering for sale, distribution, or advertising of goods; and (3) the defendant's use of the mark is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1141(1)(a)-(b). To prevail

on a claim under § 1125(a), a plaintiff must show that a defendant, "in connection with any goods or services, or any container for goods, use in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

Courts apply the same standard when analyzing both § 1114(1) and § 1125(a) claims: "that [the defendant] is using a mark confusingly similar to [the plaintiff's] valid, protectable trademark." Courts primarily focus on the "likelihood of confusion," as it is the "central element" of a trademark infringement claim. *GoTo.com, Inc. v. Walt Disney Co.,* 2020 F.3d 1199, 1205 (9th Cir. 2000). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (internal citations omitted).

The Court finds that Plaintiff pleaded sufficient facts to show that Defendant has used, and continues to use, a mark substantially similar to Plaintiff's valid ROAR trademark. To begin, Plaintiff asserts that it owns the ROAR Trademark, registered as U.S. Trademark Registration No. 3,015,285. (*See* Compl. ¶ 9; Suess Decl. ¶ 2.) Because the mark is registered, Plaintiff is presumed to be the owner of a valid mark. *See* 15 U.S.C. §§ 1065, 1115; *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005) ("Federal registration of a trademark endows it with a strong presumption of validity. The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic."). Further, Plaintiff shows that Defendant used an exact copy of the ROAR trademark to conduct its business, both inside the United States

and abroad. (*See* Korn Decl., Ex. 3, 4, 6.) Plaintiff also asserts that an internet search for "roar management" in the United States results in a "first hit"[2] on Defendant's website, where Plaintiff's trademark is prominently displayed. (Compl. ¶¶ 16, 18.)

Thus, the critical determination is whether Defendant's use of Plaintiff's ROAR trademark has created a likelihood of consumer confusion. *GoTo.com*, 2020 F.3d at 1205. Courts in the Ninth Circuit weigh eight factors (the "*Sleekcraft* Factors") to determine whether a likelihood of confusion exists: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–349 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). These factors are "'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic*, 618 F.3d at 1030. A plaintiff "need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).

The Court finds that Plaintiff has easily satisfied the *Sleekcraft* Factors, especially the strength, relatedness, similarity, and actual confusion factors. The Court analyzes each factor in turn.

First, Plaintiff's ROAR trademark is "arbitrary" as applied to talent agency services: in no way is the mark related to the normal function of a talent agency. *Official Airline Guides, Inc. v. Goss*, F.3d 1385, 1390 (9th Cir. 1993) ("An arbitrary mark consists of common words arranged in an arbitrary way that is non-descriptive of any quality of the goods or services."). Plaintiff has used the arbitrary ROAR mark for sixteen years in connection with its successful business. (Compl. ¶ 8); *see also*

---

[2] "First hit" means that Defendant's website is the first result to appear after searching "roar management" online.

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) ("Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness"). The ROAR mark is even prominently displayed on the exterior of Plaintiff's office building in Beverly Hills. (Suess Decl. ¶ 2.) Thus, the mark is strong and identifiable. The first factor therefore weighs in Plaintiff's favor.

Second, the "relatedness or proximity of the two companies' . . . services" factor also weighs heavily in Plaintiff's favor. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999). Both Plaintiff and Defendant provide talent management services to entertainment clients. (*See* Def.'s Supp. Response to Interrogatory Nos. 4–5.) As Plaintiff notes, Defendant uses the same mark, in connection with the same services, offered to the same types of clients. (App. for Def. Judg. 8, ECF No. 46); *see also Brookfield*, 174 F.3d at 1056 (noting that when marks are identical, "if they were used with identical products or services likelihood of confusion would follow as a matter of course"). Therefore, the proximity factor weighs heavily in Plaintiff's favor.

Third, Defendant's name, "ROAR Global," incorporates an identical version of Plaintiff's ROAR mark. Because both Plaintiff and Defendant offer the same services, consumers may reasonably believe that ROAR Global is an extension or international subsidiary of ROAR, LLC due to their nearly identical names.[3] Consequently, the similarity factor also weighs Plaintiff's favor.

Fourth, consumers have already confused Plaintiff and Defendant's businesses on multiple occasions, including one instance where Plaintiff signed a new client but the client's agent identified Plaintiff as "ROAR Global" in the contract. (*See* Suess Decl. ¶ 10.) While evidence "of actual confusion is not necessary to finding a

---

[3] The addition of "Global" by Defendant does not meaningfully distinguish the two marks. *See, e.g.*, *In re Dixie Restaurants, Inc.*, 105 F.3d 1405, 1407 (Fed. Cir. 1997) (holding that "THE DELTA CAFÉ" was confusingly similar to the trademark "DELTA," where both marks were used in connection with restaurants.)

likelihood of confusion," *Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prod.*, No. SA CV 16–0969–DOC (JEMx), 2016 WL 3545524, at *5 (C.D. Cal. June 28, 2016), "[e]vidence of actual confusion is strong evidence that future confusion is likely." *Official Airline Guides*, 6 F.3d at 1393. As consumers have already confused Defendant's mark with Plaintiff's mark on multiple occasions, the Court finds that the likelihood of confusion factor weighs heavily in Plaintiff's favor.

Fifth, the marketing channels factor weighs in Plaintiff' favor because both Plaintiff and Defendant extensively "utilize the Web as a marketing and advertising facility, a factor that courts have consistently recognized as exacerbating the likelihood of confusion." *Brookfield*, 174 F.3d at 1057; (*See* Compl. ¶¶ 16, 18, 19.)

Sixth, the type of goods and degree of care element weighs slightly against Plaintiff. Generally, the more expensive a service or product, "the more it can be assumed that a purchaser will exercise a greater degree of care, which decreases the likelihood of confusion." *Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307 RSWL FFMX, 2014 WL 4679001, at *8 (C.D. Cal. Sept. 18, 2014). Talent agency transactions can involve significant amounts of money. Consequently, the consumer would likely exercise greater care to ensure that they choose the correct ROAR agency. Still, virtually all of the other *Sleekcraft* elements weigh in Plaintiff's favor. Therefore, the Court finds that Plaintiff has sufficiently pleaded a meritorious claim for trademark infringement.

### 3. The Amount at Stake Weighs in Favor of Default Judgment

The fourth *Eitel* factor balances the sum of money at stake with the "seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW (MEJ), 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations and quotations omitted). The amount at stake must not be disproportionate to the harm alleged. *Id.* Default judgments are disfavored where the sum of money requested is too large or unreasonable in relation to a defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May

29, 2007). Here, Plaintiff only requests a permanent injunction and attorneys' fees. As there has been no request for monetary compensation, the Court finds that the fourth *Eitel* is either neutral or weighs slightly in favor of default judgment.

### 4. There is Little Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are in dispute. *See PepsiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471–72; *see also Auto. Indus. Pension Trust Fund v. Bi-City Paint & Body Co.*, No. C 12–01972 LB, 2012 WL 6799735, at *5 (N.D. Cal. Dec. 6, 2012) ("Given that the issues are easily ascertainable, the possibility for substantial fact disputes seems unlikely."). The Court finds there is little possibility of a dispute regarding the material facts of this case. Defendant concedes that it uses the same mark, to deliver the same services, to the same type of clients as Plaintiff. (Def.'s Supp. Response to Interrogatory No. 5.) As such, the Court finds that this factor weighs in favor of default judgment.

### 5. Defendant's Default Was Not Due to Excusable Neglect

Defendant's default *was not* the result of excusable neglect. Defendant was properly served with the Complaint and this Application for Default Judgment. Following said service, Defendant failed to replace its counsel and defend itself, even after the Court made it clear that this case would likely end in default if it did not do so. (Order Granting Ex Parte Mot. to Withdraw as Counsel of Record, ECF No. 40.) Instead, Defendant choose to rely on its belief that a decision by this Court will not be enforceable in the United Kingdom. (*See* Korn Decl. ¶ 9.) Accordingly, the Court finds that the sixth *Eitel* factor favors entry of a default judgment.

### 6. Decision on the Merits

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where a defendant fails to meaningfully participate in a case, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Defendant decided to cease all participation in this case, the Court finds that the seventh *Eitel* factor favors

entry of default judgment. After reviewing Plaintiff's Application in light of the *Eitel* factors, the Court finds an entry of default judgment appropriate. The Court next turns to Plaintiff's requested relief.

**C. Remedies**

Plaintiff requests permanent injunctive relief and $71,262 in attorneys' fees. The Court addresses each of the two requests separately.

### 1. Injunctive Relief

Plaintiff first seeks permanent injunctive relief against Defendant under the Lanham Act. (Compl. at 6–7); *see also* 15 U.S.C. § 1116(a). Permanent injunctive relief is available as part of a default judgment. *See Philip Morris*, 219 F.R.D. 494, 502 (C.D. Cal. 2003); *see also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072 (C.D. Cal. 2012). Plaintiff's requested injunction would permanently enjoin "Defendants, and each of its owners, officer, directors, servants, employees, attorneys, agents, representatives, and all persons in active concert of participation with them" from:

> (A) using, promoting, displaying, or otherwise marketing goods or services under, the trademark ROAR or any confusingly similar variation thereof, including, without limitation, ROAR GLOBAL (collectively, the "Trademark" or "Mark"), in connection with talent management services, brand promotion and management, the production and promotion of feature films, television content, musical recordings, and live events, and any services or products related thereto;
>
> (B) using, promoting, or displaying the Trademark on the Internet, including on any website or social media application (including, by way of example only, Twitter and Facebook); and
>
> (C) interfering with in any way, either directly or indirectly, Plaintiff's use, registration, marketing, expansion, enforcement, and exploitation of the Trademark.

(Prop. Judg. 1–2.)

Under the Lanham Act, "the district court [has] the 'power to grant injunctions

according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116(a)). In fact, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21*, 846 F.2d at 1180. In order for a court to grant a permanent injunction, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Plaintiff has established that injunctive relief is warranted. Injunctive relief is warranted where the infringement has, or would, if left unabated, cause irreparable harm. *Kalologie Franchising LLC v. Kalologie Skinare Med'l Group of Cal.*, No. CV 14-00016 DDP VBKX, 2014 WL 953442, at *5 (C.D. Cal. Mar. 11, 2014); *BMW of N. Am., LLC v. Fix Car Now, Inc.*, No. 2:15-CV-8758-ODW-AFM, 2016 WL 3135639, at *5 (C.D. Cal. June 2, 2016). Irreparable injury is typically found where a defendant either continues to infringe on a plaintiff's marks after being notified of its potentially infringing activities or when a defendant continues to infringe after the commencement of an infringement action. *See Kalologie Franchising LLC*, 2014 WL 953442, at *5; *BMW of N. Am., LLC*, 2016 WL 3135639, at *5; *see also Sennheiser Elec. Corp. v. Eichler*, No. CV 12-10809 MMM PLAX, 2013 WL 3811775, at *10 (C.D. Cal Jul. 19, 2013).

Plaintiff's talent agency has worked for sixteen years to build a brand and an industry reputation around the ROAR mark. (Compl. ¶ 8.) The entertainment business, more than most, relies on brand and on reputation to create economic opportunity. As a result, the Court is especially sensitive to Plaintiff's concerns of

harm stemming from continued infringement of its ROAR mark.

With this in mind, there is no evidence that Defendant halted its infringing conduct after notification by Plaintiff or at any time during the pendency of this lawsuit. It appears from the email excerpted above that Defendant intends to remain defiant and avoid participation in this or any other infringement proceeding. (*See* Korn Decl. ¶ 9.) This is the exact sort of behavior that requires implementation of a permanent injunction. The Court finds it especially troubling that potential clients are having difficulty differentiating between the protected mark and the infringing mark. (Suess Decl. ¶ 10.) This type of confusion, coupled with Defendant's use of the mark on the internet as an advertising tool, has the potential to inflict serious economic consequences on Plaintiff's business both now and in the future. (*See* Compl. ¶¶ 16, 18, 19.) Therefore, the Court finds the requisite irreparable injury.

Likewise, the Court finds that awarding monetary relief in this action would neither be feasible nor appropriate under the circumstances. Plaintiff is not seeking monetary damages in this action because Defendant's failure to participate in discovery has made it impossible to calculate such damages. (Appl. 12, ECF No. 46.) Further, assessing monetary damages now against an openly defiant Defendant would not adequately compensate Plaintiff for the damages that are almost certain to occur immediately after the conclusion of this lawsuit when the infringement continues. *See Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307 RSWL FFMX, 2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014) (holding that "even after receiving a statutory damages award, Plaintiff's injury will not be fully remedied by a monetary award because its injury is hard to compute and Defendants will continue their infringing activity if not enjoined by the Court."). Finally, as Defendant is a foreign company, it is far from certain that a judgment will be enforceable. Indeed, that appears to be *precisely* what Defendant is banking on. (Korn Decl. ¶ 9.)

Finally, the balance of hardships and the public interest favor granting a permanent injunction. While Plaintiff has no recourse against continued infringement

if the Court does not grant the injunction, Defendant need only cease using the ROAR mark to comply with the injunction. This would not prevent Defendant from pursuing its normal business as a talent agency—a talent agency which previously operated under a different name only a few short years ago. (Compl. ¶ 12.) The public interest factor also favors Plaintiff because "[i]n trademark cases, the public interest is the public's right not to be deceived or confused." *Warner Bros. Entm't, Inc. v. The Global Asylum, Inc.*, No. CV 12-9547 PSG CWX, 2012 WL 6951315, at *23 (C.D. Cal. Dec. 10, 2012). As noted several times above, consumers have already experienced significant confusion trying to distinguish between Plaintiff's protected marks and the infringing marks. Thus, the Court finds that Plaintiff is entitled to a permanent injunction enjoining and restraining Defendant from infringing Plaintiff's ROAR mark.

### 2. Attorneys' Fees

Finally, Plaintiff seeks costs and attorneys' fees under the Lanham Act. (Compl. at 7); 15 U.S.C. § 1117(a). Attorneys' fees are appropriate under the Lanham Act in "exceptional cases." 15 U.S.C. § 1117(a). "District courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional . . . exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014) and *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) and using a preponderance of the evidence standard." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). The nonexclusive factors may include "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 134 S. Ct. at 1756, n. 6 (quoting *Fogerty*, 510 U.S. at 534, n.19.)

Defendant has not complied with the Magistrate Judge's discovery orders or this Court's order to appear with new counsel. (ECF Nos. 24, 43.) Further,

Defendant has not paid the $8,137 sanction the Magistrate Judge imposed on August 10, 2016. (ECF No. 34.) The Court finds that, as a whole, Defendant's conduct renders this case exceptional. *Octane Fitness*, 134 S. Ct. at 1756. Attorneys' fees are therefore warranted.

Plaintiff requests $71,262 in attorneys' fees. (*See* Korn Decl., Ex. 7, ECF No. 46-1.) The lodestar method is used to determine a presumptively reasonable attorney fee award in trademark infringement cases under 15 U.S.C. § 1117(a). *Earthquake Sound Corp. v. Bumper Indus.,* 352 F.3d 1210 (9th Cir.2003). "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. After completing the lodestar calculation, the district court may adjust the resulting figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir. 1975)."[4] *Intel Corp. v. Terabyte Intern, Inc.,* 6 F.3d 614, 622 (9th Cir. 1993) (internal citation omitted); *see also Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1157 (9th Cir. 2002); *Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 437–38 (C.D. Cal. 2012), *aff'd*, No. 12-55821, 2016 WL 6994244 (9th Cir. Nov. 30, 2016).

Here, the Court finds that Plaintiff's requested fees are reasonable. Other Central District courts have awarded Plaintiff's attorney Korn $500-$525 an hour in attorneys' fees. *See, e.g.*, *Counts v. Meriwether*, No. 2:14-CV-00396-SVW-CW, 2016 WL 1165888, at *5–6 (C.D. Cal. Mar. 9, 2016). Plaintiff has included a detailed description and extensive documentation regarding Korn's work (which includes nominal work completed by another attorney and two paralegals at Korn's firm) on

---

[4] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

14

this case. All in all, Korn worked more than 130 hours over the span of eighteen months on this case. (*See* Korn Decl., Ex. 7.) Because Plaintiff's request for attorneys' fees is reasonable, the Court **GRANTS** Plaintiff $71,262 in attorneys' fees.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Application for Default Judgment against Defendant. The Court also **GRANTS** Plaintiff's requests for permanent injunctive relief and attorneys' fees in the amount of $71,262. Upon entry of judgment, the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

December 5, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**